**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **PATENT RESEARCH INSTITUTE, L.L.C.** § | | |
| § | | |
| **Plaintiff,** § | | |
| § | | |
| v. § | Civil Action No. 2:11-cv-00171 | |
| § | | |
| **EDGECRAFT CORPORATION,** § | | |
| § | | |
| **Defendant.** § | **JURY TRIAL DEMANDED** | |

## COMPLAINT

### I.  NATURE OF THE CASE

1.  This is an action for false patent marking under Section 292 of the Patent Act (35 U.S.C. § 292) which provides that any person may sue to recover the civil penalty for false patent marking. Plaintiff Patent Research Institute, L.L.C. brings this *qui tam* action on behalf of the United States of America against Defendant, Edgecraft Corporation.

### II. PARTIES

2.  Plaintiff Patent Research Institute, L.L.C. is a Texas limited liability company with its principal place of business in Houston, Texas.

3.  Defendant Edgecraft Corporation ("Edgecraft") is a Delaware corporation having its principal place of business at 825 Southwood Road, Avondale, Pennsylvania, 19311.

### III. JURISDICTION AND VENUE

4.  The Court has jurisdiction of this action under 28 U.S.C. §§ 1331 and 1338(a).

5.  The Court has personal jurisdiction over Edgecraft. Edgecraft has continuously conducted business within the State of Texas. Edgecraft has continuously offered for sale

and sold, marked, and advertised the products that are the subject of this Complaint in the United States, the State of Texas, and the Eastern District of Texas.

6.  Venue is proper in this district under 28 U.S.C. §§ 1391(b), 1391(c), and 1395(a).

## IV. FACTS

7.  Edgecraft has marked and continues to mark its knife sharpening products (the "Falsely Marked Products") with the expired or inapplicable patents, U.S. Patent Nos. D357,395 and D368,217 (the "Falsely Marked Patents") (attached hereto as Exhibits 1-2). Such false marking by Edgecraft includes: (a) marking the Falsely Marked Patents upon the Falsely Marked Products, (b) affixing the Falsely Marked Patents to the Falsely Marked Products and (c) using the Falsely Marked Patents in advertising in connection with the Falsely Marked Products.

8.  When a patent expires, all prospective rights in the patent terminate irrevocably. Therefore, a product marked with an expired patent is not currently protected by such expired patent. U.S. Patent No. D357,395 expired on April 18, 2009. U.S. Patent No. D368,217 expired on March 26, 2010.

9.  Moreover, patents only cover the inventions they claim. Despite this fact, Edgecraft has falsely marked the Falsely Marked Products with both Falsely Marked Patents even though the two patents describe different incompatible designs. Thus, a product such as Edgecraft's Chef's Choice ® MultiEdge Diamond Hone Model 460 knife sharpener is marked with both False Patents despite the fact that U.S. Patent No. D357,395 does not cover its design.

10. It was a false statement for Edgecraft to mark the Falsely Marked Products with expired or inapplicable patents.

11. Edgecraft is a large, sophisticated company. Edgecraft has, and/or regularly retains, sophisticated legal counsel.

12. Edgecraft has many years of experience with patents and the licensing of patents.

13. Edgecraft knew that the Falsely Marked Products were not covered by the Falsely Marked Patents. Edgecraft personnel know that patents expire and that patent rights do not apply after patents expire. Edgecraft as the owner or licensee of intellectual property knows about its intellectual property's legal status. In particular, Edgecraft knew that the Falsely Marked Patents marked on its products had expired and knew that the Falsely Marked Patents do not cover the products to which the marking is affixed.  Edgecraft has no legitimate business reason that would explain its decision 1) not to remove expired patents from its products or 2) to place inapplicable patents on those products.  Edgecraft likewise has no legitimate business reason that would explain its decision to include inapplicable patents and not to remove expired patents from its marking labels. Edgecraft also has no legitimate business reason that would explain its decision to continue utilizing the Falsely Marked Patents in its advertising and marketing of the Falsely Marked Products on the internet and at its website.

14. Edgecraft knew that it was a false statement to mark the Falsely Marked Products with expired patents.  Upon information and belief, Edgecraft intentionally marked its products with the Falsely Marked Patents for the purpose of deceiving the public into believing that something contained in or embodied in the Falsely Marked Products is covered by or protected by the Falsely Marked Patents.

15. Edgecraft knew that its use of the Falsely Marked Patents gave it a competitive advantage and would increase its revenue.

## V.  INJURY IN FACT TO THE UNITED STATES

16. Edgecraft's false marking has caused injuries and continues to cause injuries to the sovereignty of the United States arising from Edgecraft's violations of federal law, specifically, Edgecraft's violations of 35 U.S.C. § 292(a).

17. Edgecraft's false marking has caused proprietary injuries to the United States and continues to do so.

18. The marking and false marking statutes exist to give the public notice of patent rights. Congress intended the public to rely on marking as a ready means of discerning the status of intellectual property embodied in an article of manufacture or design, such as the Falsely Marked Products.

19. Federal patent policy recognizes an important public interest in permitting full and free competition in the use of ideas which are a part of the public domain such as those products described in the Falsely Marked Patents.

20. Congressional interest in preventing false marking was so great that Congress enacted 35 U.S.C. §292(a) which seeks to encourage private parties to enforce the false marking statute.  By permitting members of the public to bring *qui tam* suits on behalf of the Government, Congress authorized private persons such as Plaintiff to help control false marking.

21. Edgecraft's acts of false marking deter innovation and stifle competition in the marketplace for the following reasons: (a) if an article that is within the public domain is falsely marked, potential competitors may be dissuaded from entering the same market; (b) false marking may also deter scientific research when an inventor sees a mark and decides to forego continued research to avoid possible infringement; and (c) false marking may

cause unnecessary investment in design to avoid presumed patent infringement or costs incurred to analyze the validity or enforceability of a patent whose number has been marked upon a product with which a competitor would like to compete.

22. Edgecraft's acts of false marking mislead the public into believing that the Falsely Marked Patents give Edgecraft control of the Falsely Marked Products, and places the risk of determining whether the Falsely Marked Products are controlled by such patents on the public rather than on Edgecraft, thereby increasing the cost to the public of ascertaining whether Edgecraft in fact controls the intellectual property embodied in the Falsely Marked Products.

23. In each instance where Edgecraft has represented that the Falsely Marked Products are protected by the Falsely Marked Patents, a member of the public desiring to participate in the market for products similar to the Falsely Marked Products must incur the cost of determining whether the involved Falsely Marked Patents are valid and enforceable.

24. Edgecraft's acts of false marking also create a misleading impression that the Falsely Marked Products are technologically superior to other available products, since articles bearing the term "patent" may be presumed to be novel, useful, and innovative.

25. Every person or company in the United States is a potential entrepreneur with respect to the process, manufacture, or composition of matter described in the Falsely Marked Patents. Moreover, every person or company in the United States is a potential competitor of Edgecraft's with respect to the Falsely Marked Products marked with the Falsely Marked Patents.

26. Each Falsely Marked Product and advertisement thereof is likely to discourage or deter members of the public from commercializing a competing product even though the

Falsely Marked Patents have no legal authority to prevent any person or company in the United States from competing with Edgecraft in commercializing such products.

27. Edgecraft's marking of the Falsely Marked Products and its advertising thereof may stifle competition with respect to similar products to an immeasurable extent, thereby causing harm to the United States in an amount that cannot be readily determined.

28. Edgecraft has wrongfully and illegally advertised a patent monopoly that it does not possess and, as a result, has benefited by increasing or maintaining its market power or commercial success with respect to the Falsely Marked Products.

29. Each individual false marking (including each time an advertisement with such marking is accessed on the internet), is likely to harm the public. Thus, each such false marking is a separate offense under 35 U.S.C. § 292(a).

30. Each offense of false marking creates a proprietary interest of the United States in the penalty that may be recovered under 35 U.S.C. § 292(b).

## VI. CLAIM

31. For the reasons stated in paragraphs 7 through 30 above, Edgecraft has violated 35 U.S.C. § 292 by falsely marking the Falsely Marked Products with intent to deceive the public.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following:

A. An accounting of the number, sales, and revenue of any Falsely Marked Products;

B. A judgment in favor of Plaintiff finding that Edgecraft has falsely marked products by affixing expired patents, *i.e.,* U. S. Patent Nos. D357,395 and D368,217, or inapplicable patents, *i.e.*, U. S. Patent No. D357,395 to those products in violation of 35 U.S.C. § 292

and imposing a civil fine of $500 per each Falsely Marked Product and false marking offense or an alternative amount, as set by the Court, one-half of any such award to be paid to the United States;

C.     An award of pre-judgment and post-judgment interest on any monetary award;

D.     An injunction prohibiting Edgecraft and its officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them from violating 35 U.S.C. § 292 by affixing expired and inapplicable patents to its products and advertising that such expired and inapplicable patents protect its products;

E.     An award of attorneys fees and costs, and other expenses and an enhancement of damages and penalties; and

F.     Such other and further relief to which Plaintiff is entitled.

## JURY DEMAND

Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted

/s/ Stuart M. Nelkin
Stuart M. Nelkin
Texas Bar No. 14884000
Carol Nelkin
Texas SBN: 14883500
NELKIN & NELKIN, P.C.
5417 Chaucer Drive
Houston, Texas 77005
(713) 526-4500 Telephone
(281) 825-4161 Facsimile
*Attorneys for Plaintiff*